

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. |
| v. | VIOLATION: 18 U.S.C. § 1349 |
| | 18 U.S.C. § 1343 |
| D-1 JOHNNY HO | 18 U.S.C. § 2 |
| | 18 U.S.C. § 1957 |
| Defendant. | 18 U.S.C. § 982 |

Case: 2:22-cr-20021
Judge: Drain, Gershwin A.
MJ: Stafford, Elizabeth A.
Filed: 01-12-2022 At 03:59 PM
INDI USA V JOHNNY HO (SS)

_____/

## **INDICTMENT**

THE GRAND JURY CHARGES:

At all times relevant to this Indictment:

### **GENERAL ALLEGATIONS**

### **Payroll Protection Program Loans**

1.  The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred

to as the Paycheck Protection Program ("PPP").  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

2.  In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which is signed by an authorized representative of the business.  The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  In the PPP loan application, the small business (through its authorized representative) must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.  These figures are used to calculate the amount of money the small business is eligible to receive under the PPP.  In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

3.  A PPP loan application had to be processed by a participating lender.  If a PPP loan application is approved, the participating lender funds the PPP loan using its own monies, which are 100% guaranteed by Small Business Administration ("SBA").  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

4.  PPP loan proceeds had to be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities.  The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent

2

the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

## Economic Injury Disaster Loans

5. The Economic Injury Disaster Loan ("EIDL") program was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters

6. The CARES Act authorized the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The amount of the advance was determined by the number of employees the applicant certifies having. The advances did not have to be repaid.

7. In order to obtain an EIDL and advance, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020. The applicant had to also certify that all of the information in the application was true and correct to the best of the applicant's knowledge.

3

8.   EIDL applications were submitted directly to the SBA and processed by the agency with support from a government contractor, Rapid Finance. The amount of the loan, if the application is approved, was determined based, in part, on the information provided in the application about employment, revenue, and cost of goods, as described above. Any funds issued under an EIDL or advance were issued directly by the SBA. EIDL funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtained a loan under the Paycheck Protection Program, the EIDL funds could not be used for the same purpose as the Paycheck Protection Program funds.

### The Defendant and Related Entities

It is relevant to the Indictment that during the above-listed time period:

9.   Defendant Johnny HO ("HO") was a resident of Oakland County within the Eastern District of Michigan.

10. HO, and others known and unknown to the Grand Jury, were owners, registered agents, banking signatories, and/or otherwise affiliated with the following entities: (1) DXX Enterprises, LLC; (2) The Kongo Enterprise; (3) SFX Transportation, Inc.; (4) Seven Investment Group, LLC; (5) Cabrejas Renovations, LLC; (6) The Tax Wolf, LLC; (7) Diva Nails & Spa III, LLC; (8) Orcas, Inc.; (9) S&V Alliance, LLC; (10) Express Property Preservation, LLC; (11) Bless My Grind, LLC; (12) Cercle Interieur, Inc.; (13) The Black Wolf, Inc.; (14) Defined

Jewelry, Inc.; (15) AMG Solutions, LLC; and (16) Kwatili, LLC (collectively, the "Defendant Entities"). Each of the Defendant Entities were registered in the State of Michigan and located within the Eastern District of Michigan.

**COUNT 1**
**Conspiracy to Commit Wire Fraud**
**(18 U.S.C. § 1349)**

11. Paragraphs 1 through 10 of the General Allegations section of this Indictment are re-alleged and incorporated by reference as though fully set forth herein.

12. Between approximately March 30, 2020 through August 27, 2020, in the Eastern District of Michigan, and elsewhere, HO and others did knowingly combine, conspire, confederate and agree, to commit certain offenses against the United States, that is to violate Title 18, United States Code, section 1343, to knowingly and with the intent to defraud devise and intend to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice.

**Purpose of the Conspiracy**

13. It was a purpose of the conspiracy for HO and others to unlawfully enrich themselves by, among other things; (a) submitting, and causing the submission of false and fraudulent PPP and EIDL loan applications; (b) concealing and causing the concealment of the false and fraudulent PPP and EIDL loan applications and the receipt and transfer of proceeds of the fraud; and (c) diverting fraud proceeds for the personal use and benefit of HO and others.

**Manner and Means of the Conspiracy**

14. Between approximately April 19, 2020, through July 25, 2020, HO and others submitted, and caused the submission of, at least 15 false and fraudulent PPP loan applications worth a total of $2,420,542 on behalf of the of the Defendant Entities (collectively, the "PPP Loans"). The PPP Loans are listed in the following table by loan date and loan amount:

| No. | Approximate Loan Date | Defendant Entity | Approximate Loan Amount |
|-----|-----------------------|------------------|-------------------------|
| 1 | April 19, 2020 | DXX Enterprise, Inc. | $217,983.00 |
| 2 | April 29, 2020 | SFX Transportation, Inc. | $206,100.00 |
| 3 | April 29, 2020 | Seven Investment Group LLC | $192,140.00 |
| 4 | May 2, 2020 | The Kongo Enterprise | $198,100.00 |
| 5 | May 2, 2020 | Cabrejas Renovations LLC | $69,800.00 |

| 6 | May 7, 2020 | The Tax Wolf LLC | $69,300.00 |
| 7 | May 15, 2020 | Diva Nails & Spa III LLC | $193,700.00 |
| 8 | May 15, 2020 | Orcas, Inc. | $111,100.00 |
| 9 | May 16, 2020 | S&V Alliance LLC | $72,100.00 |
| 10 | May 20, 2020 | Express Property Preservation LLC | $217,600.00 |
| 11 | June 1, 2020 | Bless My Grind LLC | $195,383.00 |
| 12 | June 3, 2020 | Cercle Interieur, Inc. | $195,383.00 |
| 13 | June 3, 2020 | The Black Wolf, Inc. | $195,383.00 |
| 14 | June 8, 2020 | Defined Jewelry, Inc. | $197,000.00 |
| 15 | July 25, 2020 | AMG Solutions, Inc. | $89,470.00 |

15. Additionally, between approximately March 30, 2020, through August 27, 2020, HO and others submitted, and caused the submission of, at least 14 false and fraudulent EIDL loan applications worth a total of $1,734,300 on behalf of the Defendant Entities (collectively, the "EIDL Loans"). The EIDL Loans are listed in the following table by loan date, the Defendant Entity for which the loan application was submitted, and loan amount.:

| No. | Approximate Loan Date | Defendant Entity | Approximate Loan Amount |
|---|---|---|---|
| 1 | March 30, 2020 | The Kongo Enterprise | $10,000.00 |
| 2 | June 23, 2020 | Seven Investment Group LLC | $10,000.00 |
| 3 | June 25, 2020 | DXX Enterprise, Inc. | $160,000.00 |
| 4 | June 25, 2020 | AMG Solutions LLC | $160,000.00 |
| 5 | June 26, 2020 | Kwatili LLC | $160,000.00 |
| 6 | June 26, 2020 | S&V Alliance LLC | $160,000.00 |
| 7 | June 30, 2020 | Cercle Interieur, Inc. | $10,000.00 |
| 8 | June 30, 2020 | Defined Jewelry, Inc. | $114,300.00 |

| 9 | July 9, 2020 | Orcas, Inc. | $160,000.00 |
| 10 | July 11, 2020 | Bless My Grind LLC | $160,000.00 |
| 11 | July 15, 2020 | The Tax Wolf LLC | $160,000.00 |
| 12 | July 31, 2020 | The Black Wolf, Inc. | $160,000.00 |
| 13 | August 14, 2020 | SFX Transportation, Inc. | $150,000.00 |
| 14 | August 27, 2020 | Cabrejas Renovations LLC | $160,000.00 |

16. The funds for the PPP and EIDL loans were disbursed to HO and others. The funds were sent via ACH wire transfer to bank accounts that HO and/or his co-conspirators controlled.

17. In each of the applications for the PPP loans, HO and others falsely represented the amount of payroll and the number of employees working for the Defendant Entities, and the gross revenue for the Defendant Entities. Similarly, for each of the applications for the EIDL loans, HO and others falsely represented the number of employees working for the Defendant Entities and the gross revenue and cost of goods sold for the Defendant Entities.

18. Specifically, HO and his co-conspirators obtained payroll information pertaining unrelated entities and then used the unrelated entities' payroll information to support applications he submitted, or caused to be submitted, on behalf of the Defendant Entities

19. The false and fraudulent payroll information contained in the PPP loan applications was material insofar as it was capable of inducing financial institutions

to disburse funds to the Defendant and his co-conspirators that they were not eligible to receive.

20. The false and fraudulent gross revenue, cost of goods sold, and employee information in the EIDL applications was material insofar as it was capable of inducing the SBA to disburse funds to the Defendant and his co-conspirators that they were not eligible to receive.

21. Each of the false and PPP and EIDL loan applications set forth herein were submitted through wire communications used in interstate commerce.

22. Upon receipt of the fraudulently obtained loan funds, the Defendants and others undertook to conceal the nature and source of the funds by, among other things, fraudulently establishing accounts with payroll processing companies and engaging in financial transactions designed to conceal that the loan proceeds were fraudulently obtained.

All in violation of Title 18, United States Code, Section 1343.

## COUNTS 2-3
## (Wire Fraud)
## (18 U.S.C. § 1343)

23. Paragraphs 1 through 10 of the General Allegations section of this Indictment are reallaged and incorporated by reference as though fully set forth herein.

**The Scheme to Defraud**

24. The scheme and artifice to defraud set forth in Paragraph 12 of this Indictment is realleged and incorporated by reference as though fully set forth herein.

25. On or about each of the dates set forth below, in the Eastern District of Michigan, and elsewhere, JOHNNY HO, for the purposes of executing and attempting to execute the scheme to defraud as described above, knowing caused to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, and sounds, in violation of Title 18, United States Code, Section 1343, the following transmissions:

| Count | Defendant | Approximate Date | Transmission |
|-------|-----------|------------------|--------------|
| 2 | JOHNNY HO | May 15, 2020 | Application for PPP loan in the amount of $193,700 submitted to Citizens Bank. |
| 3 | JOHNNY HO | August 14, 2020 | Application for EIDL loan in the amount of $150,000 submitted to the Small Business Administration. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 4-5
## (Money Laundering)
## (18 U.S.C. § 1957)

26. Paragraphs 1 through 10 and 13 through 22 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

27. On or about the dates set forth below, in the Eastern District of Michigan and elsewhere, HO, and others acting at his direction, did knowingly engage and attempt to engage in the following monetary transactions by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is, the payment of funds, such property having been derived from a specified unlawful activity, that is, wire fraud:

| Count | Defendant | Approximate Date | Transaction |
|-------|-----------|------------------|-------------|
| 4 | JOHNNY HO | June 8, 2020 | Transfer of $16,500 from Citizens Bank account x5489 to Paychex, Inc. |
| 5 | JOHNNY HO | August 4, 2020 | Cashier's check from Chase Bank account x9151 made payable to "AMG Solutions." |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE ALLEGATIONS

### 18 U.S.C. § 982(a)(2)(a) and 18 U.S.C. § 981(a)(1)(c) with 28 U.S.C. § 2461

28. The above allegations contained in this Indictment are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. § 982(a)(2)(a) and 18 U.S.C. § 981(a)(1)(c) with 28 U.S.C. § 2461.

29. As a result of violating 18 U.S.C. §§ 1343 and 1349, as set forth in this Indictment, the Defendant shall forfeit to the United States any property, real or personal, which represents or is traceable to the gross proceeds obtained, directly or indirectly, as the result of his violations of 18 U.S.C. §§ 1343 and 1349.

30. Substitute Assets: If all or any of the forfeited sums:

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the Court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b), to seek forfeiture of any other property of HO up to the value of the forfeitable property described above.

12

31. <u>Money Judgment</u>. A sum of money equal to an amount as is proved at trial in this matter, representing the total amount of gross proceeds obtained as a result defendant's violations, as alleged in this Indictment.

THIS IS A TRUE BILL.

s/Grand Jury Foreperson
Grand Jury Foreperson

DAWN ISON
United States Attorney
Eastern District of Michigan

JOSEPH S. BEEMSTERBOER
Acting Chief
Fraud Section, Criminal Division
United States Department of Justice


*/s/John K. Neal*
JOHN K. NEAL
Assistant United States Attorney
Chief, White Collar Crime Unit
Eastern District of Michigan

*/s/ Patrick J. Suter*
PATRICK J. SUTER
Trial Attorney

1-12-22

14



| United States District Court<br>Eastern District of Michigan | Criminal Case Co | Case: 2:22-cr-20021<br>Judge: Drain, Gershwin A.<br>MJ: Stafford, Elizabeth A.<br>Filed: 01-12-2022 At 03:59 PM<br>INDI USA V JOHNNY HO (SS) |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to com

| Companion Case Information | Companion Case Number: 2:21-cr-20613 |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: Nancy G. Edmunds |
| ☒ Yes     ☐ No | AUSA's Initials: PJS |

**Case Title:** USA v.  Johnny Ho

**County where offense occurred :**  Oakland County

**Check One:**      ☒ Felony              ☐ Misdemeanor              ☐ Petty

    ✔ Indictment/____Information –– **no prior complaint.**
    ____Indictment/____Information –– based upon prior complaint [**Case number:**           ]
    ____Indictment/____Information –– based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____          **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

January 12, 2022                    s/Patrick J. Suter
_____
Date

Patrick J. Suter, Trial Attorney
211 West Fort Street, Detroit, MI 48226
Phone: (202) 679-1430
Fax:    (313) 226 - 0816
E-Mail address: Patrick.Suter2@usdoj.gov
Attorney Bar #:  CA 242494

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.